**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 31, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

STEPHEN CRAIG BURNETT,

     Plaintiff - Appellant,

v.

JUSTIN JONES, Director DOC;
DEBBIE MORTON, Administrative
Review Authority; JOSEPH TAYLOR,
Warden; JOHN MIDDLETON,
Assistant Warden; ROBIN ROOF,
Health Services Administrator;
KATHY JONES, Grievance
Officer/Warden's Secretary; LINDA
JESTER, Mail Clerk; SEBENICK,
Internal Affairs Officer; T. BATTLES,
Counselor; RAY CHOATE, Unit
Manager,

     Defendants - Appellees.

No. 10-6285
(D.C. No. 10-CV-00257-M)
(W.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **HARTZ**, and **HOLMES**, Circuit Judges.[**]

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[**] After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. See Fed. R. App. P. 34(a); 10th Cir. R. 34.1(G). The cause is therefore ordered submitted without oral argument.

Plaintiff-Appellant Stephen Burnett, a state prisoner proceeding *pro se*, appeals the district court's adoption of the magistrate judge's recommendation to dismiss or grant summary judgment to Defendants-Appellees on his 13-count civil rights complaint. There are two sets of Defendants: employees of the Cimarron Correctional Facility ("CCF") and employees of the Oklahoma Department of Corrections ("ODOC") (Mr. Jones is the director of the ODOC, and Ms. Morton is his designee). The magistrate judge recommended that all claims against CCF Defendants be dismissed for failure to exhaust administrative remedies, and that all claims against the ODOC Defendants either be dismissed or that summary judgment be granted to ODOC Defendants. The district court adopted the magistrate judge's recommendations in full.

Our jurisdiction arises under 28 U.S.C. § 1291. After reviewing the record, we affirm with instructions to the district court to clarify its judgment to reflect that certain claims against the CCF Defendants are dismissed without prejudice for failure to exhaust.[1]

## Background

---

[1]  The CCF Defendants are entitled to judgment on the following claims where we have rejected the district court's exhaustion analysis and proceeded to the merits:  Count 1 based upon grievance 09-163 and 09-216; count 2 based upon grievance 09-152; count 4 based upon appeal number 10-724; count 5 based upon grievance 10-23 and appeal number 10-1724; counts 6, 7, 8, 9, and 13.

In May 2007 Mr. Burnett filed a second amended, 13-count complaint under 42 U.S.C. § 1983, alleging numerous constitutional violations.  2 R., pt. 2, p. 183.  The complaint sought compensatory and punitive damages as well as declaratory and injunctive relief.  Id. at 209.  After the magistrate judge requested a Martinez report, see Martinez v. Aaron, 570 F.2d 317 (10th Cir. 1978) (en banc) (per curiam), 2 R., pt. 2, p. 300, the CCF Defendants moved to dismiss all 13 counts, arguing that Mr. Burnett failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act of 1996 ("PLRA").  4 R., pt. 2, p. 228.  The ODOC Defendants moved to dismiss all official-capacity claims for monetary relief based on sovereign immunity and counts 1-8 for failure to allege personal participation.  6 R., pt. 1, p. 15, 20.  The ODOC Defendants also moved for summary judgment on counts 9, 10, and 13 (Mr. Jones was the only ODOC Defendant named in counts 9 and 10; both Ms. Morton and Mr. Jones were named in count 13).  Id. at 16-19.

After reviewing the record, the magistrate judge recommended that the district court (1) grant CCF Defendants' motion to dismiss all claims for failure to exhaust, (2) grant the ODOC Defendants' motion to dismiss all official-capacity claims for monetary relief based on sovereign immunity, (3) grant the ODOC Defendants' motion to dismiss counts 1-8 for failure to allege personal participation, (4) grant the ODOC Defendants' motion for summary judgment on counts 9, 10, and 13, and (5) dismiss counts 11 and 12 as to all Defendants, and

- 3 -

count 1 as to Defendant Jester, as frivolous or for failure to state a claim under the PLRA. 6 R., pt. 2, p. 295-96. The magistrate judge further recommended that Mr. Burnett's cross-motions for summary judgment be denied and all other outstanding motions be denied as moot. Id.

Mr. Burnett filed an objection, id. at 302, but the district court adopted the report and recommendation in its entirety without discussion or analysis, id. at 344.

On appeal, Mr. Burnett argues that (1) he exhausted administrative remedies, and (2) to the extent he failed to properly exhaust, he should be excused because the failure was caused by the action or inaction of prison officials. See Aplt. Br. 2, 4, 29. Specifically, Mr. Burnett argues that Ms. Morton improperly rejected his grievance appeals on unauthorized grounds, just as had occurred in Little v. Jones, 607 F.3d 1245, 1249 (10th Cir. 2010). See id. at 29. We agree that, for several of Mr. Burnett's grievances, the actions of prison officials rendered exhaustion unavailable, thus excusing proper exhaustion. However, our review of the record reveals that Mr. Burnett failed to state a claim upon which relief could be granted, see Fed. R. Civ. P. 12(b)(6), so dismissal of the complaint against the CCF Defendants was warranted.

We also affirm the dismissal of counts 1-8 against the ODOC Defendants for failure to allege personal participation, dismissal of the official-capacity claims for monetary damages against the ODOC Defendants, the grant of

summary judgment to the ODOC Defendants on counts 9, 10, and 13, and dismissal of count 12 for failure to state a claim.

## Discussion

*A. Dismissal of Counts 1-13 Against CCF Defendants.*

We review de novo the district court's conclusion that a prisoner failed to exhaust administrative remedies. Little, 607 F.3d at 1249. "Under the Prisoner Litigation Reform Act . . . a prisoner must exhaust his administrative remedies prior to filing a lawsuit regarding prison conditions in federal court." Id. at 1249 (citations omitted). A prison or prison system's regulations define the steps a prisoner must take to properly exhaust administrative remedies. Id. Failure to follow these regulations may result in failure to exhaust. See Woodford v. Ngo, 548 U.S. 81, 93-95 (2006).

However, a prisoner must exhaust only those remedies that are "available." See Little, 607 F.3d at 1250. "Where prison officials prevent, thwart, or hinder a prisoner's efforts to avail himself of an administrative remedy, they render that remedy 'unavailable' and a court will excuse the prisoner's failure to exhaust." Id. (citation omitted). A prison official improperly thwarts a prisoner's attempt to exhaust when she rejects a prisoner's grievance appeal on grounds not permitted by the relevant regulations. Id. at 1249-50. In other words, both prisoners and prison officials must abide by the prison's regulations—improper rejection of a

grievance appeal excuses the prisoner's failure to properly exhaust.

In this case, all parties agree that the grievance process at CCF is governed by Oklahoma regulations and CCF's contract with the ODOC. ODOC Policy OP-090124 governs the grievance process. See 4 R., pt. 2, p. 194. CCF Policy 14-5 constitutes the facility-specific grievance policy.[2] See 4 R., pt. 2, p. 214.

OP-090124 establishes a four-step process. See 4 R., pt. 2, p. 198-205; see also Little, 607 F.3d at 1249 (describing the grievance process). First, a prisoner must attempt to resolve the complaint informally. 4 R., pt. 2, p. 198. If not resolved, the prisoner must submit a Request to Staff ("RTS"). Id. at 198-99. If the issue is still not resolved, the prisoner must submit a formal grievance. Id. at 199-200. After receiving a response to his formal grievance, the prisoner must appeal to the administrative review authority or chief medical officer. Id. at 202-03. Only upon proper completion of all four steps has the prisoner exhausted administrative remedies. See id. at 205; see also Little, 607 F.3d at 1249. In this case, the administrative review authority is Debbie Morton, an ODOC Defendant.

Twenty incidents form the foundation of Mr. Burnett's thirteen counts. The magistrate judge concluded that Mr. Burnett failed to exhaust administrative remedies for all 20 incidents. See 6 R., pt. 2, p. 259-84. After reviewing the record, we disagree—Mr. Burnett failed to exhaust administrative remedies for 10

---

[2] For purposes of this case, the ODOC and facility-specific procedure are the same.

incidents, but Ms. Morton improperly rejected Mr. Burnett's attempts to exhaust the remaining 10 incidents.

*1. Unexhausted Claims.*

The record reveals that Mr. Burnett did not exhaust administrative remedies pertaining to 10 incidents. Mr. Burnett did not submit a grievance regarding the incidents underlying count 11 and one incident underlying count 4.[3] CCF Defendants argue that Mr. Burnett did not appeal the denial of initial grievance numbers 09-126, 09-157, 09-158, 09-199, 09-203, and 09-170, as is required to properly exhaust administrative remedies. Aplee. Br. 11, 14, 17; see 4 R., pt. 2,

---

[3] The following is a list of grievances, the count it relates to, and its location in the appellate record.

1.     09-126 (count 1): 3 R., pt. 1, p. 55-63.
2.     09-163 (count 1): 3 R. pt. 1, 124-64.
3.     09-157 (count 1): 3 R., pt. 1, p. 112-16.
4.     09-158 (count 1): 3 R., pt. 1, p. 117-21.
5.     09-216 (count 1): 3 R., pt. 2, p. 220-33.
6.     09-152 (count 2): 3 R., pt. 1, p. 90-98.
7.     09-153 (count 2): 3 R., pt. 1, p. 99-110.
8.     09-199 (count 2): 3 R., pt. 2, p. 189-97.
9.     09-203 (count 3): 3 R., pt. 2, p. 198-205.
10.    No grievance (count 4): 2 R., pt. 2, p. 190.
11.    Appeal number 10-1724 (counts 4, 5): 2 R., pt. 2, p. 275-76.
12.    10-23 (count 5): 4 R., pt. 1, p. 23-37; 2 R., pt. 2, p 245.
13.    No number (count 5): 2 R., pt. 2, p. 285-96.
14.    09-225 (count 6): 3 R., pt. 2, p. 252-64.
15.    10-35 (count 7): 4 R., pt. 1, p. 38-57.
16.    10-38 (counts 8, 9): 4 R., pt. 1, p. 63-74.
17.    09-170 (count 10): 3 R., pt. 2, p. 184-88.
18.    09-220 (count 10): 3 R., pt. 2, p. 234-47.
19.    No grievance (count 11): 2 R., pt. 2., p. 201.
20.    09-168 (count 13): 3 R., pt. 2, p. 166-78.

p. 203-05.  After reviewing the record, we agree.  In addition, grievance number 09-153 was untimely.  Mr. Burnett's failure to file a timely RTS or appeal the reviewing authority's response under policy OP-090124 compels the conclusion that he failed to exhaust his administrative remedies with respect to these incidents.  See Woodford, 548 U.S. at 93-95.

Our review of the record reveals that Mr. Burnett also did not exhaust grievance number 09-220.  Warden Taylor, the reviewing authority, rejected the initial grievance for failure to comply with the grievance-restriction procedures contained in OP-090124.  See 4 R., pt. 2, p. 195; 3 R., pt. 2, p. 238.  Mr. Burnett appealed, and Ms. Morton, the administrative review authority, rejected the appeal on the same grounds.  See  4 R., pt. 2, p. 195; 3 R., pt. 2., p. 235.  The Supreme Court has held that prisoners must adhere to the relevant prison policies in order to exhaust administrative remedies.  Woodford, 548 U.S. at 93.  Grievance number 09-220 was not notarized, as is required by OP-090124.  See 3 R., pt. 2, p. 238; 4 R., pt. 2. p. 207.  Accordingly, Mr. Burnett failed to properly exhaust grievance number 09-220.

As we explain below, administrative remedies may be rendered unavailable—and consequently proper exhaustion may be excused—if, after a prisoner receives a response on the merits from the reviewing authority, the administrative review authority rejects a grievance appeal for failure to adhere to procedural requirements at the initial stage.  See infra p. 10-12.  This did not

- 8 -

occur with grievance number 09-220. Mr. Burnett did not receive a response on the merits on his initial grievance. See 3 R., pt. 2, p. 238. Thus, on appeal Ms. Morton could only consider the reviewing authority's treatment of the procedural issue. Ms. Morton did not exceed her authority in rejecting the grievance appeal on the same procedural grounds as the reviewing authority—she merely confirmed the reviewing authority's determination that Mr. Burnett did not comply with the relevant procedures.

Mr. Burnett argues that his failure to exhaust is due to the manipulation, action or inaction of prison officials and exhaustion should be excused. See Aplt. Br. 29. However, the record shows that failure to exhaust the above-listed grievances resulted from Mr. Burnett's own failure to submit a grievance in compliance with OP-090124. Mr. Burnett also argues that grieving the incidents underlying count 11 would have been futile. See 6 R., pt. 2, p. 282. But there is no futility exception to the PLRA's exhaustion requirement—exhaustion is required even when the administrative process does not afford the type of relief sought by the prisoner. See Booth v. Churner, 532 U.S. 731, 741 n.6 (2001). Accordingly, we affirm the district court's adoption of the magistrate judge's recommendation that counts 3, 10, and 11 be dismissed for failure to exhaust.

In considering Mr. Burnett's remaining counts, we will consider only the factual incidents for which exhaustion is excused.

*2. Claims for Which Exhaustion is Excused.*

The remaining 10 incidents must be treated differently. Mr. Burnett filed an initial grievance for each of these incidents, and received a response on the merits by the reviewing authority. However, Ms. Morton rejected each of the grievance appeals for failure to abide by procedures required at the initial stage.[4] As we explain below, under OP-090124 Ms. Morton did not have the authority to do so.

Nine of Mr. Burnett's grievance appeals—numbers 09-152, 09-163, 09-216, 10-23, count 5 (no number), 09-225, 10-35, 10-38, and appeal number 10-1724—were denied for failure to include proper documentation. At the time the initial grievances were submitted, Mr. Burnett was on grievance restriction. Pursuant to OP-090124, he was required to attach to each grievance (1) a duly-verified affidavit, and (2) a list of grievances submitted within the last 12 months. See 4 R., pt. 2, p. 207. OP-090124 provides that the "reviewing authority will determine whether the offender has complied with the [grievance-restriction] requirements for being permitted to submit a grievance." Id. The "reviewing authority" is the facility head or health services administrator "to whom the grievance *is first submitted.*" Id. at 195 (emphasis added). Ms. Morton is the

---

[4] One of the grievance appeals, number 10-23, was rejected by Genese McCoy, the Chief Medical Officer. See 2 R., pt. 2, p. 245. OP-090124 requires an appeal to either the Director of the ODOC's designee, in this case Ms. Morton, or the chief medical officer, in this case Ms. McCoy. See 4 R., pt. 2, p. 203-04. The requirements for appeal to either are the same. Accordingly, our treatment of the grievance appeal denied by Ms. McCoy is the same as those denied by Ms. Morton.

"administrative review authority," the ODOC Director's designee "to whom the formal grievance is submitted *for final appeal*." Id. (emphasis added).

OP-090124 imposes no additional requirements for grievance appeals submitted by prisoners on grievance restriction. See id. at 203-04. There is no provision authorizing the administrative review authority to reject a grievance appeal for failure to comply with grievance-restriction procedures when the prisoner has received a response on the merits from the reviewing authority. See id.; cf. Little, 607 F.3d at 1250 (noting that OP-090124 does not grant the administrative review authority the ability to reject a grievance appeal for including more than one issue). Indeed, the precise opposite is true: OP-090124 expressly states that the reviewing authority will ensure compliance with the grievance-restriction procedures, implying that the administrative review authority lacks that power. See 4 R., pt. 2, p. 207; cf. Little, 607 F.3d at 1250 (noting that the policy permitted the reviewing authority to reject a grievance with more than one issue, implying that the administrative review officer did not have that authority).

Accordingly, we conclude that under OP-090124 the administrative review authority lacks the authority to reject a grievance appeal for failure to comply with the grievance-restriction procedures when the reviewing authority responds on the merits. Thus, Ms. Morton erred in rejecting Mr. Burnett's grievance appeals for grievances numbers 09-152, 09-163, 09-216, 10-23, count 5 (no

- 11 -

number), 09-225, 10-35, 10-38, and appeal number 10-1724. Because Ms. Morton's actions in rejecting these appeals rendered proper exhaustion unavailable, proper exhaustion for these incidents is excused. See Little, 607 F.3d at 1250.

Our decision in Little also compels the conclusion that Ms. Morton erred in rejecting Mr. Burnett's appeals concerning grievance number 09-168, which Ms. Morton returned unanswered for failure to submit the RTS to the appropriate staff member and for failure to include time-frames in the original grievance, even though the reviewing authority responded to the grievance on the merits. See 3 R., pt. 2, p. 167; Little, 607 F.3d at 1250 (concluding that the administrative review authority could not reject a grievance appeal for failure to comply with the procedures for an initial grievance).

Several times in the report and recommendation the magistrate judge stated that Mr. Burnett was informed he could resubmit the grievance appeal within 10 days, and that Mr. Burnett's failure to do so constituted failure to exhaust. See, e.g., 6 R., pt. 2, p. 265, 266, 268. But there is no provision in OP-090124 for resubmitting a grievance appeal. See 4 R., pt. 2, p. 202-05. Thus, the magistrate judge erred to the extent it based its ultimate conclusions on Mr. Burnett's failure to resubmit a grievance appeal. See Little, 607 F.3d at 1250.

However, our conclusions regarding exhaustion do not end the matter. We may affirm the district court's dismissal on any ground supported by the record.

See GF Gaming Corp. v. City of Black Hawk, 405 F.3d 876, 882 (10th Cir. 2005). Accordingly, we will review the record to determine whether dismissal was appropriate for those counts supported by grievances for which exhaustion is excused.

To survive a motion to dismiss, "the complaint must allege sufficient facts to make the claim plausible on its face." Kerber v. Qwest Group Life Ins. Plan, — F.3d —, 2011 WL 2151201, at *7 (10th Cir. 2011) (citation omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). Mr. Burnett's complaint fails to state a claim on which relief may be granted against the CCF Defendants.

1. Count 1.

In count 1, Mr. Burnett alleges that CCF Defendants Jester and Middleton interfered with his constitutional rights to send and receive legal mail. 2 R., pt. 2, p. 188. Two grievances for which exhaustion has been excused, 09-163 and 09-216, form the basis to count 1. Id. Mr. Burnett alleges that (1) on one occasion Mr. Burnett was not allowed access to the legal mail center, and (2) on one occasion incoming legal mail was delayed for two-and-a-half days for no valid reason. Id.

To state a claim for violation of the constitutional right to access the courts, a prisoner "must demonstrate actual injury . . . —that is, that the prisoner was

- 13 -

frustrated or impeded in his efforts to pursue a nonfrivolous legal claim concerning his conviction or his conditions of confinement." Gee v. Pacheco, 627 F.3d 1178, 1191 (10th Cir. 2010) (citing Lewis v. Casey, 518 U.S. 343, 351-55 (1996)). Mr. Burnett does not allege that the Defendants' actions actually hindered his ability to pursue a nonfrivolous legal claim. Accordingly, we affirm the dismissal of count 1.

2. Count 2.

In count 2, Mr. Burnett alleges that CCF Defendants Taylor and Middleton interfered with his right to litigate in court by denying him adequate time in the law library. 2 R., pt. 2, p. 188. One grievance, 09-152, for which exhaustion is excused forms the basis for this count. Id. However, again Mr. Burnett does not allege that the Defendants' actions hindered his ability to pursue a nonfrivolous legal claim. See Gee, 627 F.3d at 1191. Accordingly, we affirm the dismissal of count 2.

3. Count 4.

In count 4, Mr. Burnett alleged that he attempted to place a collect phone call to his son, an attorney, but that the phone call had been blocked. 2 R., pt. 2, p. 190. He alleges that this single occurrence infringed upon his free-speech rights under the First Amendment. Id.

One grievance, appeal number 10-1724, for which exhaustion is excused underlies this count. Id. In response to Mr. Burnett's request to staff, Ms. Kathy

Jones, a CCF Defendant, replied that in order to permit a collect phone call she needed a letter on the attorney's letterhead stating that he was Mr. Burnett's attorney of record.  Id.

Mr. Burnett cites no cases for the proposition that restricting collect phone calls in this manner violates the First Amendment, and our independent research reveals none.  Indeed, we have acknowledged that "'a prisoner's right to telephone access is subject to rational limitations in the face of legitimate security interests of the penal institution.'"  Robinson v. Gunja, 92 F. App'x 624, 627 (10th Cir. 2004) (unpublished) (quoting Washington v. Reno, 35 F.3d 1093, 1100 (6th Cir. 1994)).  Mr. Burnett does not allege or argue that the CCF's telephone policy is not rationally related to a legitimate penological interest or provide other facts suggesting that the policy is invalid.  Accordingly, dismissal of count 4 was appropriate.

### 4. Count 5.

In count 5, Mr. Burnett alleges that prison officials subjected him to cruel and unusual punishment and retaliation by failing to automatically renew his prescription for Naproxen, an anti-inflammatory drug that was prescribed by the facility medical provider.  2 R., pt. 2., p. 191.  Two grievances for which exhaustion is excused, 10-23 and appeal number 10-1724, underlie count 5.  Id.  However, the complaint reveals that Mr. Burnett's prescription was renewed after he submitted a grievance, precluding a plausible claim of deliberate indifference.

- 15 -

See 2 R., pt. 2, p. 191; see Martinez v. Beggs, 563 F.3d 1082, 1089 (10th Cir. 2009) ("[T]he prisoner must show that the defendants knew he faced a substantial risk of harm and disregarded that risk, by *failing to take reasonable measures to abate it*." (emphasis added) (internal quotation marks and citation omitted)).

Mr. Burnett also alleges that prison officials failed to renew his prescription before it was anticipated to run out. 2 R., pt. 2, p. 191. However, he does not allege that prison officials failed to take reasonable measures to remedy the situation. See Martinez, 563 F.3d at 1089. Indeed, the complaint does not reveal whether officials provided Mr. Burnett with medication before his supply actually ran out. See 2 R., pt. 2, p. 191.

Regarding Mr. Burnett's allegations of retaliation, he alleges no "'specific facts showing retaliation because of the exercise of the prisoner's constitutional rights.'" Gee, 627 F.3d at 1191 (quoting Frazier v. Dubois, 922 F.2d 560, 562 n.1 (10th Cir. 1990)). Accordingly, count 5 does not state a claim upon which relief can be granted, and dismissal was appropriate.

### 5. Count 6.

In count 6, Mr. Burnett alleges that CCF Defendant Taylor denied him his First Amendment right to practice his religion. 2 R., pt. 2, p. 192. Mr. Burnett does not allege any statutory violations. He alleges that the facility was on lockdown during Hanukkah and Christmas, and that he was denied the opportunity to gather with other members of his faith to celebrate those religious

holidays.  Id.  He further alleges that despite the lockdown, prisoners were able to perform their normal jobs, suggesting that the facility's stated security concerns were pretextual.  Id.  Grievance number 09-225, for which exhaustion is excused, underlies count 6.  Id.  In response to his grievance, prison officials said that Mr. Burnett could practice his religion by worshiping in his cell.  3 R., pt. 2, p. 207.

"[I]n order to allege a constitutional violation based on a free exercise claim, a prisoner-plaintiff must survive a two-step inquiry."  Kay v. Bemis, 500 F.3d 1214, 1218 (10th Cir. 2007).  The prisoner "must first show that a prison regulation substantially burdened sincerely-held religious beliefs."  Id. (internal quotation marks and citation omitted).  Then, the prison officials may advance a legitimate penological interest to justify the regulation.  Id. at 1218-19.  After this initial two-step, the court must apply the four-factor balancing test from Turner v. Safley, 482 U.S. 78, 89-91 (1987).  Id. at 1219.

Mr. Burnett does not allege that the failure to allow group gatherings substantially burdened his religious practice.  Contra Boles v. Neet, 486 F.3d 1177, 1182 (10th Cir. 2007) (plaintiff showed substantial burden by alleging that "according to . . . Jewish Law, Jewish males are required to wear a head covering at all times" (internal quotation marks and citation omitted)).  Indeed, Mr. Burnett's allegations establish, at the most, a bare desire to hold group gatherings to mark religious holidays.  Devoid of allegations that his religious practice is substantially burdened, count 6 does not state a claim upon which relief may be

granted.  See Kay, 500 F.3d at 1218.

6. Count 7.

In count 7, Mr. Burnett alleges that several CCF Defendants retaliated against him by decreasing his security level from 4 to 1.  2 R., pt. 2, p. 193. Grievance number 10-35, for which exhaustion is excused, forms the basis for count 7.  Id.  According to Mr. Burnett, Defendants informed him that he was demoted because he did not have a job.  Id.  Mr. Burnett alleges that there are prison inmates who do not have jobs that are nonetheless classified as level 3 or 4.  Id.  However, Mr. Burnett does not allege any facts demonstrating causation between protected activities and demotion, much less the required "'specific facts showing retaliation because of the exercise of the prisoner's constitutional rights.'" Gee, 627 F.3d at 1191 (quoting Frazier, 922 F.2d at 562 n.1).

Mr. Burnett also alleges that he was demoted from level 4 to level 1 without due process, in violation of the 14th Amendment.  2 R., pt. 2, p. 193. However, Mr. Burnett acknowledges that because he is serving a life sentence he does not receive good-time credits based on his level.  Id.  Thus, the downgrade does not inevitably effect the duration of his sentence.  See Sandin v. Connoer, 515 U.S. 472, 487 (1995).  Further, the decreased privileges that flow from demotion from level 4 to level 1 do not "present a dramatic departure from the basic conditions" of Mr. Burnett's confinement.  Id. at 485.  Accordingly, Mr. Burnett was not deprived of a protected liberty interest, and count 7 fails to state

- 18 -

a claim upon which relief can be granted.

7. Count 8.

In count 8, Mr. Burnett alleges that CCF Defendants Taylor and Choate denied him his constitutional rights to freedom of speech, familial association, privacy, and confidential communication with his attorney. 2 R., pt. 2, p. 194. Mr. Burnett alleges that members of his family—including his son, who is a licensed attorney—traveled long distances to visit him. He requested a "special visit," which permits contact between prisoners and visitors. His request was denied by Defendants Taylor and Choate, and he was afforded a no-contact, "behind-glass" visit, with communication only through a recorded telephone system. Id. Mr. Burnett alleges that he was denied a contact visit out of retaliation, and that his status as a level 1 inmate was pretext for retaliation. Id. Grievance number 10-38, for which exhaustion has been excused, forms the basis for count 8. Id.

Again, Mr. Burnett fails to allege "specific facts showing retaliation because of the exercise of the prisoner's constitutional rights." Gee, 627 F.3d at 1191 (quoting Frazier, 922 F.2d at 562 n.1). Indeed, the visitation policy clearly states that level 1 prisoners are limited to non-contact visits. See 4 R., pt. 2, p. 178. Thus, to the extent he alleges retaliation, he fails to state a claim on which relief can be granted. See Gee, 627 F.3d at 1191. Further, Mr. Burnett does not allege that the non-contact visit impeded his ability to pursue a nonfrivolous legal

claim, as is required to state a claim for interference of the right to access the courts. See Gee, 627 F.3d at 1191; Eckert v. Camp, 166 F.3d 347, 1998 WL 830551, at *4 (10th Cir. 1998) (unpublished table decision) (applying actual injury standard to alleged denial of visitation with attorney). Finally, the ODOC's visitation regulation, in relevant part, is substantially the same as the visitation policy upheld in Overton v. Bazzetta, 539 U.S. 126 (2003). Compare Overton, 539 U.S. at 129-30 with 4 R., pt. 2, p. 176-88. Mr. Burnett alleges no facts and makes no argument on which to distinguish Overton. Therefore, count 8 does not state a claim upon which relief can be granted and was correctly dismissed.

### 8. Count 9.

In count 9, Mr. Burnett alleges that the CCF's visitation policy violated the 14th Amendment. 2 R., pt. 2, p. 196. Grievance number 10-38, for which exhaustion is excused, underlies count 9. Id.

As we note *supra* in the context of count 8, the ODOC's visitation policy is this case is substantially similar to that in Overton. Again, Mr. Burnett alleges no facts and makes no arguments on which to distinguish Overton. Compare Overton, 539 U.S. at 129-30 with 4 R., pt. 2, p. 176-88. Accordingly, dismissal of count 9 was appropriate.

### 9. Count 13.

In count 13, Mr. Burnett alleges that CCF is under-staffed, leading to

unsafe conditions that violate the Eighth Amendment. 2 R., pt. 2, p. 203. Grievance number 09-168, for which exhaustion is excused, underlies count 13. Id. Mr. Burnett alleges that, due to a shortage of staff, a gang fight broke out among inmates, and that the dangerous conditions are ongoing. Id. However, Mr. Burnett also alleges that prison officials placed the facility on lockdown after the fight. See id. While he alleges that two other incidents took place as the facility was coming off lockdown, he does not allege any facts supporting the conclusion that Defendants' decisions regarding staffing contributed to those incidents. See id. Accordingly, Mr. Burnett has failed to demonstrate that prison officials did not take reasonable steps to abate the risk as is required to show deliberate indifference in violation of the Eighth Amendment, see Martinez, 563 F.3d at 1089, and dismissal of count 13 was appropriate.

Because Mr. Burnett has failed to state a claim on which relief may be granted, we affirm the district court's adoption of the magistrate judge's recommendation to dismiss counts 1, 2, 4, 5, 6, 7, 8, 9 and 13 against the CCF Defendants. On remand, the district court shall clarify its judgment to reflect which claims are dismissed without prejudice.

*B. Dismissal of Official-Capacity Claims Against ODOC Defendants.*

The magistrate judge recommended that official-capacity claims for monetary damages be dismissed. 6 R., pt. 2, p. 284. The district court correctly adopted this recommendation. Id. at 343-44; see Edelman v. Jordan, 415 U.S.

651, 664-67 (1974) (sovereign immunity bars official-capacity suits for retrospective relief). The district court was also correct in adopting the magistrate judge's recommendation that all claims against the ODOC be dismissed. See Griess v. Colorado, 841 F.2d 1042, 1044-45 (10th Cir. 1988) (sovereign immunity bars suits against the Colorado DOC).

*C. Dismissal of Counts 1-8 Against ODOC Defendants.*

The magistrate judge recommended that counts 1-8 against the ODOC Defendants be dismissed for failure to allege personal participation. 6 R., pt. 2, p. 284-85. The district court adopted the recommendation. Id. at 343-44.

"'Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation.'" Gallagher v. Shelton, 587 F.3d 1063, 1069 (10th Cir. 2009) (quoting Foote v. Spiegel, 118 F.3d 1416, 1423 (10th Cir. 1997)). The complaint contains an initial paragraph alleging, in conclusory fashion, that all Defendants personally participated in all the alleged constitutional violations. See 2 R., pt. 2, p. 187. However, in the body of the complaint Mr. Burnett alleges no facts suggesting that the ODOC Defendants were personally involved in the deprivations alleged in counts 1-8. Accordingly, dismissal of counts 1-8 against the ODOC Defendants was appropriate.

*D. Summary Judgment to ODOC Defendants.*

The magistrate judge recommended that the ODOC Defendants' motion for summary judgment on counts 9, 10, and 13 be granted. 6 R., pt. 2, p. 295-96.

- 22 -

The district court adopted the recommendation in full.  Id. at 344.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  We review the grant of summary judgment de novo.  See Nahno-Lopez v. Houser, 625 F.3d 1279, 1283 (10th Cir. 2010).

1. Count 9.

In count 9, Mr. Burnett alleges that he was subjected to unequal treatment and discriminatory enforcement of CCF's visitation policy, and that the visitation policy violated the 14th Amendment.  2 R., pt. 2, p. 196.  The magistrate judge recommended granting summary judgment to the ODOC Defendants, concluding that the policy was a reasonable restriction on visitation under Overton v. Bazzetta, 539 U.S. 126 (2003) and Wirsching v. Colorado, 360 F.3d 1191 (10th Cir. 2004).  6 R., pt. 2, p. 288-90.  The magistrate judge also concluded that Mr. Burnett produced no evidence in support of his retaliation claim.  Id. at 289-90.  After carefully reviewing the record, we agree.  Mr. Burnett did not produce evidence that raises a genuine dispute that the visitation policy does not bear a rational relation to legitimate penological interest, Overton, 539 U.S. at 132, nor did he produce any evidence that the policy was enforced in a discriminatory or retaliatory manner.

2.  Count 10.

The magistrate judge recommended that summary judgment on count 10 be

granted for failure to allege personal participation by the ODOC Defendants. See 6 R., pt. 2, p. 290-91. However, as we hold *supra*, Mr. Burnett did not submit a grievance for count 10, and exhaustion is not excused for the incidents underlying that count. Accordingly, we affirm the grant of summary judgment to ODOC Defendants on that ground.

### 3. Count 13.

In count 13, Mr. Burnett alleges that, due to a chronic shortage of staff, CCF became so unsafe as to violate the Eighth Amendment's ban on cruel and unusual punishment. 2 R., pt. 2, p. 203-05. The magistrate judge recommended that summary judgment be granted to Defendants on this count, concluding that Mr. Burnett "provided no facts creating an inference that any prison official knew of and disregarded a substantial risk of serious harm to Plaintiff's safety." 6 R., pt. 2, p. 292. We agree. Mr. Burnett's allegations of a gang fight and subsequent lockdown do not show that "prison official[s] w[ere] deliberately indifferent to his safety," Smith v. Cummings, 445 F.3d 1254, 1258 (10th Cir. 2006) (internal quotation marks and citation omitted). Accordingly, summary judgment was appropriate.

As we noted *supra*, Mr. Burnett did not submit a grievance regarding count 11. Accordingly, we affirm the dismissal of count 11 against the ODOC Defendants.

In count 12, Mr. Burnett sought to invoke the district court's supplemental

jurisdiction to assert violations of state law.  2 R., pt. 2, p. 202.  But Mr. Burnett alleges no such state-law claims.  Accordingly, count 12 was properly dismissed.

Given our disposition, we need not reach Mr. Burnett's numerous challenges to different orders of the district court.  We deny Mr. Burnett's motion to proceed IFP.  We deny all other outstanding motions as moot.

AFFIRMED with instructions to the district court to clarify its judgment to reflect any claims against CCF Defendants dismissed without prejudice for failure to exhaust.

Entered for the Court


Paul J. Kelly, Jr.
Circuit Judge